Argued and submitted March 3, reversed in part; otherwise affirmed
December 9, 1998

Christine A. TANNER;
Barbara J. Limandri; Regenia M. Phillips;
Lisa J. Chickadonz; Terrie A. Lyons;
and Kathleen A. Grogan,
*Respondents,*

*v.*

OREGON HEALTH SCIENCES UNIVERSITY,
a division of the State of Oregon;
State Board of Higher Education,
a division of the State of Oregon;
Executive Department of the State of Oregon;
the State of Oregon; and
Oregon Health Sciences University,
a public corporation,
*Appellants,*

*and*

PUBLIC EMPLOYEES' BENEFITS BOARD,
*Appellant.*

(9201-00369; CA A94458)

971 P2d 435

Robert B. Rocklin, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Carl G. Kiss argued the cause and filed the brief for respondents.

Lynn-Marie Crider filed a brief *amicus curiae* for Oregon Public Employees Union, SEIU Local 503, AFL-CIO, CLC.

Lynn R. Nakamoto and Jennifer C. Pizer filed a brief *amicus curiae* for American Civil Liberties Union Foundation of Oregon, Inc., and Lambda Legal Defense and Education Fund, Inc.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.*

LANDAU, P. J.

---

* Wollheim, J., *vice* Riggs, J., resigned.

## LANDAU, P. J.

At issue in this case is the lawfulness of Oregon Health Science University's (OHSU) denial of health and life insurance benefits to the unmarried domestic partners of its homosexual employees. Plaintiffs, who are three lesbian employees of OHSU and their domestic partners, initiated this action for judicial review of State Employees' Benefits Board (SEBB) orders affirming the lawfulness of the denial and for declaratory and injunctive relief. Plaintiffs contend that OHSU's actions violate ORS 659.030(1)(b), which prohibits discrimination in employment on the basis of the sex of an employee or the sex of any other person with whom the employee associates, as well as Article I, section 20, of the Oregon Constitution, which prohibits granting privileges or immunities not equally belonging to all citizens. Plaintiffs named as defendants OHSU, the State of Oregon, the State Board of Higher Education, the Executive Department, and SEBB.

The matter was tried to the court. Following the trial, the 1995 Legislative Assembly enacted legislation transforming OHSU from a state university to a nonstate agency public corporation. The trial court ultimately concluded that OHSU's denial of benefits violated both ORS 659.030(1)(b) and Article I, section 20, of the Oregon Constitution, and entered an order enjoining the state from denying group insurance benefits to unmarried domestic partners of its homosexual employees.

Defendants appeal, arguing that the trial court erred in concluding that OHSU violated either the statute or the constitution. Plaintiffs contend that the trial court's judgment was correct in all respects. On our own motion, we requested briefing from the parties on the question whether the conversion of OHSU from a state university to a nonstate agency public corporation renders the action moot as to any defendants.

We conclude that the action is moot as to all state agency defendants and that the case must be remanded with instructions to dismiss all claims against those defendants. We conclude that the case is not moot as to OHSU. As to the

merits of the controversy, we conclude that the trial court erred in declaring that OHSU violated ORS 659.030(1)(b). The evidence in this record does not support a claim for violation of that statute. We also conclude, however, that the trial court was correct in declaring that OHSU's denial of insurance benefits to domestic partners of homosexual employees violates Article I, section 20, of the Oregon Constitution.

## I.  FACTUAL BACKGROUND

The relevant facts are not in dispute. Before this controversy arose, OHSU provided group health insurance benefits to its employees. It provided each employee a certain amount of money and authorized each employee to select insurance benefits within the limits of the money provided. In accordance with SEBB eligibility criteria, OHSU permitted employees to purchase insurance coverage for "family members." Under the SEBB criteria, unmarried domestic partners of employees were not "family members" who were entitled to insurance coverage.

Plaintiffs are three lesbian nursing professionals employed by OHSU and their unmarried domestic partners. Each of the couples has enjoyed a long-term and committed relationship, which each wishes to continue for life. Each of the couples would be married if Oregon law permitted homosexual couples to marry.

All three OHSU employees applied for medical and dental insurance benefits for their domestic partners. The OHSU benefits manager refused to process the applications on the ground that the domestic partners of the employees did not meet the SEBB eligibility criteria. Plaintiffs appealed to SEBB itself, and, in a series of 1991 letters, SEBB's Case Management Committee upheld OHSU's denial of benefits.

Plaintiffs filed their complaint initiating this action. They petitioned for judicial review of a final order in other than a contested case, alleging that the 1991 SEBB letters constituted final orders and that the orders should be reversed on the ground that the denial of benefits violated ORS 659.030(1)(b) and Article I, section 20. In the same complaint, plaintiffs requested a declaratory judgment on the

same grounds as to the lawfulness of the denial and an injunction prohibiting OHSU from denying insurance benefits to domestic partners of homosexual employees that are made available to spouses of married OHSU employees.

The case was tried to the court in February 1995. At trial, the parties stipulated that OHSU paid the same amount of money for a fringe benefit package to all employees in a given category, without regard to marital status or sexual orientation. The parties further stipulated that, in administering its employee benefits program, OHSU treated heterosexual unmarried couples and homosexual unmarried couples the same. Plaintiffs declined to stipulate that OHSU did not intend its administration of the benefits to discriminate against gay and lesbian employees. In response, OHSU elicited testimony from the State Administrator of the Human Resource Management Division of the Department of Administrative Services that the sex or sexual orientation of employees was not taken into account in any way in the administration of state benefits programs. Plaintiffs offered no contrary testimony.

The court took the matter under advisement. Meanwhile, the 1995 Legislative Assembly enacted legislation declaring that OHSU no longer is part of the State Board of Higher Education, but is instead an independent public corporation. Or Laws 1995, ch 162, §§ 2, 74. The new legislation further declares that the terms and conditions of employment at OHSU are to be determined and administered by the Board of Directors of OHSU:

> "ORS 243.105 to 243.585 [pertaining to fringe benefits and deferred compensation plans for employees of state agencies] shall apply to the Oregon Health Sciences University until the Oregon Health Sciences University Board of Directors, in accordance with the provisions of any collective bargaining agreement, adopts a new personnel system or alternative employee benefit plan. Until such time as an alternative personnel system is adopted, the university shall exercise exclusive administrative authority and control over the system."

Or Laws 1995, ch 162, § 10. The new legislation became effective July 1, 1995. Or Laws 1995, ch 162, § 95. The transfer of

employees from the State Board of Higher Education was to be completed by January 1, 1996. Or Laws 1995, ch 162, § 43. On the basis of the new legislation, defendants[1] filed a supplemental memorandum of authority and requested that the case be dismissed as moot. Plaintiffs opposed the motion.

On June 14, 1996, the trial court issued a letter opinion concluding that the denial of benefits to plaintiffs and their domestic partners violated ORS 659.030(1)(b) and Article I, section 20. The court did not address defendants' request that the case be dismissed as moot. Shortly after that, plaintiffs prepared a proposed form of judgment. Defendants objected to the form of judgment, contending that, among other things, it applied to state agency defendants that no longer had any interest in the controversy.

On August 12, 1996, the court entered its judgment, containing findings of fact and conclusions of law. The judgment enjoined the State of Oregon, OHSU, SEBB, and the State Board of Higher Education from continuing the practice of denying group life, health, and dental insurance coverage to domestic partners of homosexual employees when those benefits are offered to spouses of heterosexual employees. The judgment defines "domestic partners" as homosexual persons not related by blood closer than first cousins who are not legally married, who have continuously lived together in an exclusive and loving relationship that they intend to maintain for the rest of their lives, who have joint financial accounts and joint financial responsibilities, who would be married to each other if Oregon law permitted it, who have no other domestic partners, and who are 18 years of age or older. The judgment awarded plaintiffs their costs and attorney fees.

Defendants appealed. While the appeal was pending, the legislature enacted legislation abolishing SEBB and transferring all of SEBB's duties to a newly created Public Employees' Benefits Board (PEBB). Or Laws 1997, ch 22. The parties submitted a stipulated motion for substitution of PEBB for SEBB and for an order directing the trial court to

---

[1] For ease of reference, we refer to all of the responding parties as "defendants." We understand that SEBB actually is not a defendant, but is instead a "respondent" to a petition for judicial review.

enter an amended judgment reflecting that change. The motion was allowed, and the trial court amended the judgment accordingly. That legislation otherwise has no effect on this litigation.

Also while the appeal was pending, OHSU adopted an employee benefit plan that now provides fringe benefits for the domestic partners of its employees, whether or not they are married. It continues to take the position, however, that it is not legally obligated to provide such benefits.

## II. PRELIMINARY ISSUES: JUSTICIABILITY

Before we address the merits of the parties' positions as to the judgment in this case, we must address the extent to which there is a justiciable controversy. Defendants raised the issue to the trial court—twice, in fact. The trial court did not address defendants' contentions. Oddly, defendants made no mention of justiciability in their briefs on appeal. On our own motion, however, we asked the parties to address the justiciability of the issues raised.[2] We did so because neither the acquiescence of the trial court nor the failure of parties to address the issue on appeal can confer authority on the courts to issue an opinion in the absence of a justiciable controversy. *Barcik v. Kubiaczyk*, 321 Or 174, 186, 859 P2d 765 (1995). The exercise of judicial power requires a concrete controversy that results in a decree that binds parties having adverse legal interests. *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). Regardless of the perceived importance of the legal issues presented, Oregon courts do not have the constitutional authority to render advisory opinions. *Id.*

In response to our queries as to the possible mootness of some or all of the claims presented against some or all of the defendants, defendants take the position that the case

---

[2] Specifically, we asked the parties:

"1. Do all of the plaintiffs currently receive from the Oregon Health Sciences University the domestic partner fringe benefits they sought in this action?

"2. If the answer to the first question is affirmative, are the domestic partner fringe benefits provided to plaintiffs by the Oregon Health Sciences University governed in any way by SEBB (or PEBB)?

"3. If the answer to the first question is affirmative, does a justiciable controversy exist between any plaintiff and any defendant in this action?"

is moot as to all defendants except OHSU. According to defendants, given the transformation of OHSU to a public corporation, the state no longer has an interest in the outcome of the case and cannot be bound by any judgment that results. Plaintiffs take the position that there remains a live controversy as to all defendants. They assert two justifications for their position. First, they argue that they are, in effect, acting in a representative capacity for all similarly situated homosexual couples, whether employed by the state or not, and that, as a result, the state remains adverse to their claims. They find support for that position in *School Dist. No. 1 v. Nilsen*, 271 Or 461, 534 P2d 1135 (1975). Second, they argue that, because the trial court awarded them attorney fees, their entitlement to those fees requires that we determine the correctness. of the trial court's disposition of the merits of the case, even if otherwise moot. We agree with defendants that plaintiffs' claims are moot as to all defendants except OHSU.

We begin with OHSU. As we have noted, OHSU currently provides precisely the domestic partner benefits that plaintiffs seek in this action. OHSU continues to maintain that it is under no legal obligation to do so, however. The voluntary cessation of a practice that is challenged in an action for declaratory and injunctive relief does not, in itself, render an action moot; if the law were otherwise, wrongdoers could cease their wrongdoing as soon as complaints are filed and resume the wrongdoing as soon as the complaints are dismissed for being moot. *Gates v. McClure*, 284 Or 685, 689, 588 P2d 32 (1978); *Safeway v. OPEU*, 152 Or App 349, 357, 954 P2d 196 (1998).

We turn to the state agency defendants. In their complaint, plaintiff employees alleged that they were employed by the state and State Board of Higher Education. Before the entry of judgment in the case, however, that was no longer so. The legislature, by that time, had declared that OHSU is no longer a state agency, Or Laws 1995, ch 162, §§ 2, 74, and all OHSU employees had been transferred from their previous employment with the State Board of Higher Education, Or Laws 1995, ch 162, § 43. By the time the trial court entered its judgment, therefore, the state and the State Board of Higher Education no longer had an interest in the outcome of

the case and could no longer be bound by any remedy that resulted.

We reach the same conclusion as to SEBB and the Executive Department of which it is a part. Plaintiffs' claim against SEBB pertained solely to the 1991 letters denying their applications for benefits. Before the judgment was entered, however, the legislature declared that OHSU no longer is a state agency and no longer is subject to the administration of its employee benefits by SEBB. The legislature declared that OHSU may elect to adopt its own personnel system. It further declared that, "[u]ntil such time as an alternative personnel system is adopted, *the university shall exercise exclusive administrative authority and control over the system*." Or Laws 1995, ch 162, § 10 (emphasis added). Thus, after July 1, 1995, the effective date of the new OHSU legislation, SEBB had no authority independent of OHSU to offer benefits to plaintiffs, and its previous orders denying benefits to plaintiffs became moot.

Plaintiffs requested only prospective relief from the state defendants. They did not ask for money damages or for retroactive provision of insurance benefits. By the time the trial court entered its judgment, it could order no relief against any of the state defendants in this case. Its decision to declare that the state defendants violated the law, and its entry of an injunction against them, therefore, were erroneous.

Plaintiffs' arguments to the contrary are unavailing. First, their argument that the case against the state defendants remains alive and well because plaintiffs sued in a representative capacity is belied by their own complaint, which contains no such allegations. Plaintiffs could have framed their complaint as a class action. ORCP 32. They did not do so, and they cannot attempt to convert it into one for the first time on appeal.

The Supreme Court's decision in *Nilsen*, on which plaintiffs heavily rely, is entirely consistent with ours in this case. In *Nilsen*, the plaintiff probationary teacher complained to the Commissioner of the Bureau of Labor who, through the Attorney General, initiated an action against a school district for employment discrimination, based on the district's policy

of requiring pregnant probationary teachers to resign. While the appeal was pending, the district rehired—and ultimately granted tenure to—the plaintiff. The court noted the special nature of the proceeding initiated by the commissioner, who, although taking action on the filing of a private complaint, nevertheless acted in a representative capacity:

> "[I]t is apparent from the statutes that it was the intention of the legislature that other persons situated similarly to the private complainant could be encompassed within the remedial authority of the Commissioner so that, in this respect, the proceeding is in the nature of a class action although only a specific individual is named as being the subject of discrimination."

*Nilsen*, 271 Or at 472. In that context, the court held that, although the complaining private party had been rehired, because of the special representative nature of the parties in an action brought by the commissioner, the case had not been rendered moot. *Id.* at 476.

This case was not initiated by the Commissioner of the Bureau of Labor and Industries. Plaintiffs themselves initiated it. Thus, the broad remedial authority of the commissioner is not brought into play, as was so critically the case in *Nilsen. Compare* ORS 659.049 to 659.095 (actions by commissioner) *with* ORS 659.121 (actions by individuals). Plaintiffs represent no one but themselves in this matter. Because they no longer are employed by a state agency, therefore, the state defendants no longer have an interest in the outcome of this case.

■ Second, plaintiffs' argument that the propriety of their judgment for attorney fees requires us to address the merits of the underlying claims is similarly unpersuasive. We assume, for the sake of argument, that plaintiffs are correct that a judgment for attorney fees requires examination of the merits of a case that otherwise have become moot since the entry of the judgment. *Cf. Barcik*, 321 Or at 189 n 10 (declining to address whether a prayer for attorney fees prevents claims from becoming moot on appeal). The fact remains that, in this case, the claims against the state defendants became moot *before* the trial court entered its judgment for

attorney fees. Thus, because at the time of the entry of judgment the trial court had no authority to enter *any* judgment against the state defendants, the entire case against those defendants—merits and award of attorney fees—is moot.

### III.   ANALYSIS OF THE PARTIES' CLAIMS ON THE MERITS

We turn, then, to the portion of the case that remains a live controversy, that is, the lawfulness of OHSU's denial of insurance benefits to domestic partners of its homosexual employees. Following the traditional "first things first" decisional methodology of Oregon judicial opinions, we begin with the question whether OHSU's denial violated applicable employment statutes and, if not, turn to whether the denial violates the state constitution. *See Planned Parenthood Assn. v. Dept. of Human Resources*, 297 Or 562, 564, 687 P2d 785 (1984); *Young v. Alongi*, 123 Or App 74, 77-78, 858 P2d 1339 (1993).

### A.   *Violation of ORS 659.030(1)(b)*

Plaintiffs allege, and the trial court held, that OHSU's denial of benefits to domestic partners of OHSU's employees violated ORS 659.030(1)(b). That statute provides, in part:

"(1)   * * * [I]t is an unlawful employment practice:

"* * * * *

"(b)   For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older, or because of the race, religion, color, sex, national origin, marital status or age of any other person with whom the individual associates * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

ORS 659.030(1)(b). On appeal, OHSU argues that the trial court erred, because its denial of benefits was in no way predicated on the sex of any employee or of any individual with whom an employee associates. OHSU argues that its denial of benefits instead was based on marital status alone, without reference to the sexual orientation of the employees or

their domestic partners. OHSU emphasizes that *any* unmarried domestic partners—heterosexual and homosexual alike—were denied insurance benefits.

Plaintiffs acknowledge that, at least on the surface, OHSU denied benefits to unmarried domestic partners of its employees without regard to their sexual orientation. They argue that OHSU's denial of benefits to domestic partners nevertheless violates ORS 659.030(1)(b) because, although OHSU's denials did not facially discriminate against homosexual couples, the denials had the effect of discriminating against homosexual couples. That is so, plaintiffs argue, because homosexual couples cannot marry. Heterosexual couples can marry and thus at least have the option of doing so to avail themselves of the employee benefits; homosexual couples cannot marry and have no such option. Because of the disparate impact on homosexual couples of denying benefits on the otherwise facially neutral basis of marital status, plaintiffs argue, OHSU has discriminated on the basis of the sex of persons with whom employees associate, in violation of ORS 659.030(1)(b).

OHSU rejoins that, even if its denial of benefits constitutes discrimination on the basis of sex, there is no unlawful employment practice, because a separate statute, ORS 659.028, provides that, when discrimination is a product of the terms of a bona fide benefits plan, the discrimination is actionable only if it is part of a subterfuge to evade the purposes of the fair employment statutes. There is no evidence in this case, OHSU argues, that the denials of benefits occurred as part of a subterfuge to evade the purposes of the fair employment statutes.

Plaintiffs respond that ORS 659.028 operates as an affirmative defense and that, to avail itself of the "safe harbor" that the statute affords, OHSU must demonstrate that its denials were not part of a prohibited subterfuge. According to plaintiffs, OHSU, having failed in its burden of proof under ORS 659.028, is left with its violation of ORS 659.030(1)(b).

Whether OHSU's denial of insurance benefits to domestic partners of its homosexual employees amounts to unlawful discrimination "because of the * * * sex * * * of any

other person with whom the [employee] associates," ORS 659.030(1)(b), involves two subsidiary issues. First, we must determine whether discrimination on the basis of sexual orientation constitutes prohibited discrimination because of the "sex * * * of any other person with whom the [employee] associates"; if it does not, then the dispute is at an end. Second, we must determine whether OHSU's denials of insurance benefits in this case constituted discrimination "because of" plaintiffs' sexual orientation.

■   Whether ORS 659.030(1)(b) encompasses discrimination because of sexual orientation is a matter of first impression. The Supreme Court has suggested that it is at least possible to construe the statute to apply to discrimination on the basis of sexual orientation. *ACLU v. Roberts*, 305 Or 522, 752 P2d 1215 (1988) ("It is possible to construe some Oregon statutes as prohibiting discrimination based on sexual orientation. *See, e.g.*, ORS 659.030(1)(b)."). The court did not purport actually to construe ORS 659.030(1)(b) or any other statute to say that, however. It remains for us, therefore, to determine the intended meaning of the statute, looking to its text in context and, if necessary, its history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

In our view, the Supreme Court's suggestion in *Roberts* is the only plausible construction of the statutory language. The statute prohibits discrimination on the basis of the "sex * * * of any other person with whom an individual associates." ORS 659.030(1)(b). Plaintiffs allege that OHSU discriminated against them by denying them the option of providing their domestic partners insurance benefits because their domestic partners are of the same sex. Discrimination of that sort hinges on the sex of the individual with whom plaintiffs associate. It plainly falls within the wording of the statute.

■   Whether OHSU's denial of insurance benefits to domestic partners of its homosexual employees amounted to discrimination "because of" their sexual orientation may not be so readily answered. OHSU's denial of benefits to plaintiffs ostensibly was based on the fact that plaintiffs were unmarried. As OHSU contends—and as plaintiffs concede—

its practice of denying benefits to domestic partners was based on a definition of eligible family members that applied both to unmarried heterosexual couples and unmarried homosexual couples. Ostensibly, therefore, OHSU did not discriminate "because of" sexual orientation; it discriminated "because of" marital status, without regard to sexual orientation.

■     Merely because discrimination is not obvious, however, does not mean that it is not actionable. We have held that ORS 659.030 prohibits not only employment practices that facially discriminate against a protected class of employees, but also practices that are facially neutral concerning the protected class but have a disparate impact on that class. *Spurgeon v. Stayton Canning Company*, 92 Or App 566, 570-71, 759 P2d 1104 (1988); *Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or App 692, 700, 650 P2d 929 (1982), *rev den* 294 Or 682 (1983). To make out an employment discrimination claim based on disparate impact, a plaintiff must show: (1) membership in a class protected by the employment statutes, and (2) that the employer's facially neutral employment rule "has the effect of screening out members of a protected class at a significantly higher rate than others." *Spurgeon*, 92 Or App at 570-71.

In this case, as we have held, plaintiffs are members of a protected class under ORS 659.030(1)(b). Moreover, there can be no question but that the effect of OHSU's practice of denying insurance benefits to unmarried domestic partners, while facially neutral as to homosexual couples, effectively screens out 100 percent of them from obtaining full coverage for both partners. That is because, under Oregon law, homosexual couples may not marry.[3]

There remains the question whether plaintiffs' claims are subject to the more limited liability described in ORS 659.028, which provides, in part:

[3] The relevant statutes define marriage in terms of a civil contract entered into by males and females who are thereby joined together as husband and wife. ORS 106.010; ORS 106.041. No party raises, and we do not address, the constitutionality of prohibiting homosexual couples from marrying.

> "It is not an unlawful employment practice for an employer, employment agency or labor organization to observe the terms of a * * * bona fide employee benefit plan, such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes of this chapter."

The parties do not dispute that the insurance benefits at issue in this case and OHSU's policy of denying benefits to the domestic partners of unmarried employees are part of a "bona fide employee benefit plan." The only question is whether OHSU's denial of benefits was part of a "subterfuge to evade the purposes" of the employment statutes. Answering that question, however, entails addressing three more: First, precisely what does "subterfuge" mean; more specifically, does it require proof of intent? Second, who has the burden of proving the presence or absence of a subterfuge? Third, has the burden of proof been satisfied in this case?

■■ We begin with the meaning of the statutory term "subterfuge." Once again, we are presented with an interpretive question of first impression, which we resolve on the basis of the text in context and, if necessary, legislative history and other aids to construction. *PGE*, 317 Or at 606-10. In examining the text of a statute, we give words of common usage their "plain, natural and ordinary meaning" unless there is textual or contextual evidence that the legislature intended some other meaning to apply. *Id.* at 611. A "subterfuge" ordinarily refers to "a deception by artifice or stratagem to conceal, escape, avoid or evade." *Webster's Third New Int'l Dictionary*, 2281 (unabridged ed 1993). The term obviously entails intentional conduct; one does not accidentally or negligently deceive by artifice or stratagem. Nothing in the text or context of the statute suggests a contrary definition.

We note in that regard that our reading of the statute comports with the construction given the nearly identical language of the federal legislation on which ORS 659.028 was based. The federal Age Discrimination in Employment Act of 1967 (ADEA) forbids arbitrary discrimination by public and private employers against their employees because of age. 29 USC § 623(a)(1). Section 623(f)(2) of the ADEA provides that decisions made pursuant to the terms of "any bona fide employee benefit plan such as a retirement, pension, or

insurance plan, which is not a subterfuge to evade the purposes of" the ADEA are exempted from the general prohibition against age discrimination. In *Public Employees v. Betts*, 492 US 158, 109 S Ct 2854, 106 L Ed 2d 134 (1989), the United States Supreme Court construed section 623(f)(2) and specifically addressed the meaning of the reference to "subterfuge" in that section. The Court began by noting that the ordinary meaning of the term is "a scheme, plan, stratagem, or artifice or evasion." *Id.* at 167 (internal quotation marks omitted). It then concluded that nothing in the text of the ADEA or its legislative history required a different definition. *Id.* at 167-68. Applying the ordinary meaning of the term, the Court held that proof of actual intent to discriminate is required.

There remain the questions as to who has the burden of proof and whether it has been satisfied. Plaintiffs contend that ORS 659.028 states an affirmative defense, thus placing the burden upon defendants to establish their lack of intent to discriminate to avoid liability under ORS 659.030. OHSU contends that ORS 659.028 merely describes the type of conduct that is prohibited in a context that is more specific than the more generally worded ORS 659.030. Thus, according to OHSU, when discrimination occurs as part of the terms of a bona fide employee benefit plan, it is the plaintiff who must prove that the defendant did so intentionally to prevail on his or her claim.

We need not attempt to resolve that issue in this case, however. Regardless of who bears the burden of proof, the fact is that, on the record in this case, it is clear that OHSU did not engage in a subterfuge. Appellate review of the evidence on the issue is *de novo*. *Wincer v. Ind. Paper Stock Co.*, 48 Or App 859, 862-63, 618 P2d 15 (1980). Our review of that evidence reveals that there is unrebutted testimony that sexual orientation was not taken into account in the administration of OHSU's employee benefits program and that OHSU did not intend, directly or indirectly, to discriminate on the basis of sexual orientation. Accordingly, although OHSU's practice of denying insurance benefits to unmarried domestic partners of its homosexual employees had an otherwise unlawful disparate impact on a protected class, because there is no evidence that OHSU engaged in a

subterfuge to discriminate against that protected class—and because there is affirmative evidence that it did not—it did not engage in an unlawful employment practice. The trial court erred in reaching a contrary conclusion.

B. *Violation of Article I, section 20*

■ Finally, we address whether OHSU's denial of insurance benefits to the unmarried domestic partners of its homosexual employees violated Article I, section 20, of the Oregon Constitution, which provides:

> "No law shall be passed granting to any citizen or class of citizens privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

Plaintiffs allege, and the trial court held, that OHSU's denial of benefits to domestic partners of its employees violated Article I, section 20. On appeal, OHSU argues that the trial court erred because OHSU's denials did not discriminate on the basis of sexual orientation but instead on the basis of marital status, discrimination that is justified by the entirely rational purpose of promoting the institution of marriage. Plaintiffs reply that OHSU's practices have the effect of denying a privilege—insurance benefits—to a class of citizens—homosexuals—without any justification and that the practice runs afoul of the constitution. OHSU acknowledges that its denials have the effect of discriminating against homosexual couples. It contends that such a discriminatory effect is not actionable in the absence of an intentionally discriminatory classification.

■ We begin with a matter that, although not raised by the parties, is necessary to the disposition of their constitutional contentions, namely, the implications of the legislation that transformed OHSU from a state agency to a public corporation. Article I, section 20, by its terms, does not constrain the conduct of wholly private entities. It prohibits the passage of laws granting citizens or classes of citizens privileges or immunities on unequal terms. The courts have construed the reference to "laws" to include both legislative enactments and the administration of laws under delegated authority. *State v. Freeland*, 295 Or 367, 370, 667 P2d 509 (1983) (district attorney charging practices subject to Article I, section

20). But in all cases, those constrained by that section of the constitution are government entities of one sort or another.

The legislature has declared that OHSU no longer is a "state agency." Or Laws 1995, ch 162, § 2. Nevertheless, the legislature also declared that OHSU remains "a governmental entity performing governmental functions and exercising governmental powers." *Id.* We conclude therefore that, although the legislature has declared OHSU to be a nonstate agency public corporation, it remains a governmental entity subject to the prohibitions of Article I, section 20.

The parties' constitutional arguments on the merits present still further matters of first impression. In addressing those arguments, we do not pretend that the cases construing Article I, section 20, describe a completed, coherent jurisprudence. It is perhaps best to view the cases at this juncture as something of a work in progress. Nevertheless, we draw from the cases the following rules, which we conclude are sufficiently clear to enable us to dispose of the arguments presented.

Article I, section 20, prohibits granting privileges or immunities to one citizen or class of citizens that are not equally available to all citizens. That generally is understood to express two separate prohibitions. As the Supreme Court explained in its seminal opinion, *State v. Clark*, 291 Or 231, 237, 630 P2d 810 (1981), the clause "forbids inequality of privileges or immunities not available upon the same terms, first, to any citizen, and second, to any class of citizens." In this case, plaintiffs contend that they are members of a class of citizens—homosexual couples—to whom certain privileges—insurance benefits—are not made available.

As used in the Article I, section 20, case law, the term "class" takes on special meaning; only laws that disparately treat a "true class" may violate that section of the constitution. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 610, 932 P2d 1145, *cert den* ___ US ___ , 118 S Ct 557, 139 L Ed 2d 399 (1997). In attempting to describe precisely what is meant by a "true class," the cases draw a distinction between classes that are created by the challenged law or government action itself and classes that are defined in terms of characteristics that are shared apart from the challenged law or action.

The standard example of a nontrue class, drawn from the Supreme Court's decision in *Clark*, is the classification created by a statute that imposes a filing deadline for filing a petition for review. Such legislation creates two classes of persons: (1) those who timely file petitions for review, and (2) those who do not. Both are "classes" of persons, at least in the colloquial sense of groups having something in common. But in the absence of the statute, they have no identity at all. Legislation that disparately affects such "classes" does not violate Article I, section 20, because of the essentially circular nature of the argument: The legislation cannot disparately affect a class that the legislation itself creates. *Clark*, 291 Or at 240. *See also Sealy v. Hicks*, 309 Or 387, 397, 788 P2d 435 (1990); *Hale v. Port of Portland*, 308 Or 508, 525, 783 P2d 506 (1989).

In contrast, Article I, section 20, does protect against disparate treatment of true classes, those that have identity apart from the challenged law itself. Various formulations have been used to describe in some affirmative way what a true class *is*, as opposed to merely what it is *not* in reference to classes created by the challenged legislation. The cases refer to classification by "*ad hominem* characteristic," *Van Wormer v. City of Salem*, 309 Or 404, 408, 788 P2d 443 (1990), by "personal characteristic," *Zockert v. Fanning*, 310 Or 514, 523, 800 P2d 773 (1990), and by "antecedent personal or social characteristics or societal status," *Hale*, 308 Or at 525. Examples of true classes include gender, ethnic background, legitimacy, past or present residency, and military service. *Clark*, 291 Or at 240.

To say that disparately treated true classes are protected by Article I, section 20, does not end the matter. Depending on what type of true class is involved, the legislation or governmental action may or may not be upheld in spite of the disparity. In that regard, the cases draw a distinction between "suspect" classes and other true classes. The former classes are subject to a more demanding level of scrutiny, and legislation or government action disparately treating such classes is much more likely to run afoul of Article I, section 20, than is legislation or government action that disparately treats a nonsuspect class.

The leading opinion on suspect classes is *Hewitt v. SAIF*, 294 Or 33, 653 P2d 970 (1982). In that case, the plaintiff, a man, challenged the constitutionality of a statute that permitted an unmarried woman to collect death benefits upon the death of an unmarried man with whom she cohabited for over one year. He contended that the statute, which made no provision for death benefits to an unmarried man who had cohabited with an unmarried woman for the required period, violated Article I, section 20, of the Oregon Constitution. *Id.* at 35. The court held that, under Article I, section 20, disparate treatment of classes that may be regarded as "suspect" is subject to particularly exacting scrutiny. *Id.* at 45. The court did not define precisely what it meant by "suspect" class. It did say that a class is suspect when it is defined in terms of "immutable" characteristics and "can be suspected of reflecting 'invidious' social or political premises, that is to say prejudice or stereotyped prejudgments." *Id.* The court held that gender constitutes such a class. *Id.* It then held that the denial of benefits to the plaintiff, a member of the suspect class defined by his male gender, was "inherently suspect." *Id.* at 46. That suspicion, the court held, could be overcome only by evidence that the denial of benefits to him is justified on the basis of "biological differences" between those who are entitled to the benefits under the statute and those who are not. *Id.* Finding no such justification in the record, the court declared that the statute violated Article I, section 20. *Id.* at 50.

Although the court in *Hewitt* referred to "immutable" characteristics as being sufficient for defining a suspect class under Article I, section 20, subsequent cases make clear that immutability—in the sense of inability to alter or change—is not necessary. The court has since explained that, in addition to gender, such classes as alienage, *Greist v. Phillips*, 322 Or 281, 300, 906 P2d 789 (1995) (race, sex and alienage are "inherently suspect" classes), and religious affiliation, *State v. Bucholz*, 309 Or 442, 446, 788 P2d 988 (1990) (race and religion are "impermissible criteria" of classification); *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 695 P2d 25 (1985) (religious affiliation an impermissible

classification), also are suspect classes.[4] Both alienage and religious affiliation may be changed almost at will. For that matter, given modern medical technology, so also may gender. We therefore understand from the cases that the focus of suspect class definition is not necessarily the immutability of the common, class-defining characteristics, but instead the fact that such characteristics are historically regarded as defining distinct, socially recognized groups that have been the subject of adverse social or political stereotyping or prejudice. If a law or government action fails to offer privileges and immunities to members of such a class on equal terms, the law or action is inherently suspect and, as the court made clear in *Hewitt*, may be upheld only if the failure to make the privileges or immunities available to that class can be justified by genuine differences between the disparately treated class and those to whom the privileges and immunities are granted.

Some classes are not suspect, but nevertheless remain true classes for Article I, section 20, purposes. Geographical residence is the common example of a nonsuspect true class. *Clark*, 291 Or at 240. Disparate treatment of such classes may be justified on a "rational basis" examination, *Seto v. Tri-County Metro. Transportation Dist.*, 311 Or 456, 814 P2d 1060 (1991), although the case law on that point is not entirely consistent. *Compare Hale*, 308 Or at 524 (rational basis examination common to Equal Protection Clause cases "has been superseded by our more recent [Article I, section 20] decisions") *with State v. Tucker*, 315 Or 321, 338, 845 P2d 904 (1993) (Article I, section 20, challenge to death-penalty statute rejected because the statute "established clear, rational and definitive criteria").

Turning to the facts of this case, there is no question but that plaintiffs are members of a true class. That class—unmarried homosexual couples—is not defined by any statute nor by the practices that are the subject of plaintiffs' challenges. Moreover, the class clearly is defined in terms of *ad hominem*, personal and social characteristics. The question

---

[4] The court also has suggested in *dictum* that nationality and facial hair likewise "doubtless" would be stricken as impermissible classifications. *Sealey*, 309 Or at 398 n 12.

then is whether plaintiffs are members of a suspect class. Here, too, we have no difficulty concluding that plaintiffs are members of a suspect class. Sexual orientation, like gender, race, alienage, and religious affiliation is widely regarded as defining a distinct, socially recognized group of citizens, and certainly it is beyond dispute that homosexuals in our society have been and continue to be the subject of adverse social and political stereotyping and prejudice.

Because plaintiffs are members of a suspect class to which certain privileges and immunities are not made available, we must determine whether the fact that the privileges and immunities are not available to that class may be justified by genuine differences between the class and those to whom the privileges and immunities are made available. Stated perhaps more plainly, we must determine whether the fact that the domestic partners of homosexual OHSU employees cannot obtain insurance benefits can be justified by their homosexuality. The parties have suggested no such justification, and we can envision none.

OHSU's defense is that it determined eligibility for insurance benefits on the basis of marital status, not sexual orientation. According to OHSU, the fact that such a facially neutral classification has the unintended side effect of discriminating against homosexual couples who cannot marry is not actionable under Article I, section 20. We are not persuaded by the asserted defense. Article I, section 20, does not prohibit only intentional discrimination. On point in that regard is the Supreme Court's decision in *Zockert*. In that case, the plaintiff parent challenged the constitutionality of a statutory scheme that provided indigent parents court-appointed counsel in parental termination proceedings but did not provide for court-appointed counsel in adoption proceedings that have the effect of terminating parental rights. After concluding that the plaintiff was a member of a true class—the court did not explain precisely which type of true class—it observed that the legislature apparently was unaware of the disparity between the parental termination and adoption proceeding statutes and did not make a conscious policy to treat indigent parents in the two similar proceedings unequally. *Zockert*, 310 Or at 522. The court nevertheless concluded that the unintended side effect of providing

counsel in termination proceedings was to treat a true class of citizens disparately in violation of Article I, section 20. *Id.* at 523-24. Intentional conduct, the court held, is not required for discrimination to be actionable under that section of the constitution. *Id.* at 523 n 12.

So also in this case, OHSU has taken action with no apparent intention to treat disparately members of any true class of citizens. Nevertheless, its actions have the undeniable effect of doing just that. As in *Zockert*, OHSU's intentions in this case are not relevant. What is relevant is the extent to which privileges or immunities are not made available to all citizens on equal terms.

OHSU insists that in this case privileges and immunities are available to all on equal terms: All *married* employees—heterosexual and homosexual alike—are permitted to acquire insurance benefits for their spouses. That reasoning misses the point, however. Homosexual couples may not marry. Accordingly, the benefits are not made available on equal terms. They are made available on terms that, for gay and lesbian couples, are a legal impossibility.

We conclude that OHSU's denial of insurance benefits to the unmarried domestic partners of its homosexual employees violated Article I, section 20, of the Oregon Constitution, and that the trial court correctly entered judgment in favor of plaintiffs on that ground.

Reversed as to declaration that Oregon Health Sciences University's benefit program violates ORS 659.030(1)(b); remanded with instructions to enter judgment dismissing the State of Oregon, the State Board of Higher Education, the Executive Department and PEBB; otherwise affirmed.