Argued and submitted December 11, 2001, affirmed March 13, 2002

## Bruce L. ADAMS
## and Daniel A. Reichman,
*Petitioners,*

*v.*

## PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

## 99-0389; A111942

42 P3d 911

James M. Brown argued the cause for petitioners. On the briefs were Loren W. Collins and Enfield Brown Collins Knivila & Cook.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

.

**HASELTON, P. J.**

Petitioners, who worked as mental health therapists at the Oregon State Hospital (OSH), seek judicial review of a final order of the Public Employees Retirement Board (Board) that concluded that petitioners were not "police officers" for purposes of Public Employee Retirement System (PERS) classifications. They raise a panoply of statutory construction, substantial evidence, and constitutional challenges. We reject those arguments—including petitioners' contention that they were employed as members of a "law enforcement unit" for purposes of the definition of "police officers." *See* ORS 238.005(14)(L) (1999); ORS 181.610(5); ORS 181.610(12). Consequently, we affirm.

The Board found the relevant facts as follows. Petitioners are employed in Ward 50G of the Forensic Rehabilitation and Transition Services Program/Social Rehabilitation Unit at OSH, and are within the job classification "Mental Health Therapist 1." OSH is divided into four units: child, adolescent and geropsychiatric services; adult services; forensic evaluation services; and forensic rehabilitation and transition services. About 80 percent of the patients in the forensic units have been committed to the jurisdiction of the Psychiatric Security Review Board (PSRB), but the units also provide services to people who have been civilly committed or have been found incompetent to stand trial. The Forensic Rehabilitation and Transition Services unit consists of six wards. Ward 50G, where petitioners work, is a residential ward with 35 beds, approximately 92 percent of which are occupied by patients under PSRB's jurisdiction.

Mental Health Therapists on Ward 50G are certified nursing assistants who monitor the patients' work activities, therapeutic programs, recreational activities, and meals. They perform care and treatment of patients and serve as case monitors for small groups of assigned patients. They assist in the implementation of treatment plans. They document patients' progress and meet with treatment teams to present case histories and summarize patients' progress toward treatment goals. The mental health therapists keep track of patients, check them for contraband, and escort them when they need to leave the ward. They also intervene in and

diffuse altercations between the residents. Both petitioners have been assaulted and sustained injuries while dealing with violent patients on Ward 50G.

In 1999, petitioners requested that PERS classify them as "police officers" for purposes of the retirement system. PERS denied their request on the ground that mental health therapists did not meet the statutory criteria for police officers, and that OSH did not meet the definition of "law enforcement unit" set forth in ORS 181.610(12). Petitioners requested a contested case hearing for review of the denial of their request for reclassification.

After a hearing in May 2000, the hearing officer drafted a proposed order setting forth findings of fact, and concluding that petitioners were not entitled to be classified as "police officers" for purposes of PERS because OSH is not a "law enforcement unit" as defined by ORS 181.610(12). In September 2000, the Board adopted the hearing officer's proposed order and entered a final order to that effect. Petitioners seek judicial review of that final order.

Before turning to petitioners' specific arguments, we set forth the relevant statutes that frame the dispute. PERS statutes make different provisions for police officers and firefighters from those for other public employees in the retirement system. For purposes of PERS, "police officer" includes:

> "Corrections officers as defined in ORS 181.610." ORS 238.005(14)(L) (1999).[1]

ORS 181.610(5), in turn, defines "corrections officer" as follows:

> " 'Corrections officer' means an officer or member of a *law enforcement unit* who is employed full-time thereby and is charged with and primarily performs the duty of custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined in a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles." (Emphasis added.)

---

[1] The 2001 Legislature amended ORS 238.005, including the definition of "police officer," although the portion cross-referencing the definition of "corrections officer" was unaffected by the amendments. *See* Or Laws 2001, ch 295, § 9; Or Laws 2001, ch 968, § 1. We refer to the 1999 version of the statute.

ORS 181.610(12)(a) provides:

" 'Law enforcement unit' means a police force or *organization of the state*, a city, port, school district, mass transit district, county, county service district authorized to provide law enforcement services under ORS 451.010, Indian reservation, Criminal Justice Division of the Department of Justice, the Department of Corrections, the Oregon State Lottery Commission or common carrier railroad *whose primary duty, as prescribed by law, ordinance or directive, is any one or more of the following*:

"(A)   Detecting crime and enforcing the criminal laws of this state or laws or ordinances relating to airport security;

"(B)   *The custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention* other than a place used exclusively for incarceration or detention of juveniles; or

"(C)   The control, supervision and reformation of adult offenders placed on parole or sentenced to probation and investigation of adult offenders on parole or probation or being considered for parole or probation." (Emphasis added.)

Petitioners' argument for inclusion in PERS as police officers rests on their contention that they qualify as "corrections officers" under ORS 181.610(5). They contend that they provide "custody, control or supervision" of the patients on Ward 50G, most of whom are under the jurisdiction of PSRB and, therefore, necessarily have been "convicted of or arrested for a criminal offense and confined in a place of incarceration or detention."[2] ORS 181.610(5). They further assert that the forensic unit at OSH that includes Ward 50G constitutes a "law enforcement unit" as defined in ORS 181.610(12)(a) because it is an "organization of the state * * * whose primary duty, as prescribed by law, ordinance or directive," includes "custody, control or supervision of individuals convicted of or arrested for a criminal offense and

_____

[2] Respondent takes issue with the characterization of those within the jurisdiction of PSRB as having been "convicted," asserting that being found "guilty except for insanity," ORS 161.295, is not equivalent to a conviction. Given our analysis and resolution of this case, we need not resolve that question.

confined to a place of incarceration or detention[.]" Alternatively, and in all events, petitioners contend that OSH, as a whole, is a "law enforcement unit." The Board did not reach the question of whether petitioners "primarily perform[ ] the duty of custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined in a place of incarceration or detention," ORS 181.610(5), because it concluded that, in any event, OSH is not a "law enforcement unit" under ORS 181.610(12)(a).

On judicial review, petitioners contend that the Board erred in numerous respects. Primarily, petitioners contend that the Board erred in concluding that neither the forensics units nor OSH as a whole is a "law enforcement unit" as defined in ORS 181.610(12)(a). Petitioners make a number of related arguments that are dependent on the success of their primary argument. They contend that the Board erred in failing to make specific findings of fact concerning the security of the forensics units at OSH; that the Board erred in finding that petitioners had been assaulted by patients "occasionally" rather than "frequently"; and that the Board erred in failing to determine whether mental health therapists in the forensic units at OSH primarily perform "the duties of custody, control and supervision of individuals convicted of or arrested for criminal offenses," within the meaning of ORS 181.610(5). Finally, petitioners argue that, if the Board correctly determined that they do not qualify as "police officers" under the PERS statutes, then the statutes lack a rational basis under the Equal Privileges and Immunities Clause of Article I, section 20, of the Oregon Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

We write primarily to address the first of petitioners' arguments—*viz.*, whether the forensic units at OSH are "law enforcement units" within the meaning of ORS 181.610(12)(a)—and, even if not, whether OSH as a whole is a "law enforcement unit." We do not reach petitioners' various arguments concerning the adequacy of the findings pertaining to the security measures at the forensic units or petitioners' job duties, because such findings would be relevant only if petitioners were found to be members of a "law enforcement unit." Finally, for reasons discussed at the end

of this opinion, we reject petitioners' constitutional arguments.

We turn to the proper construction and application of "law enforcement unit." The parties argue at length about whether "law enforcement unit" is an "inexact term" or whether, as respondent suggests, we should give deference to the Board's interpretation of that statutory term under the methodology of *Springfield Education Assoc. v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980).[3] Under ORS 181.610(12)(a), a "law enforcement unit" may be an "organization of the state * * * whose primary duty, as prescribed by law, ordinance or directive, is any one or more of [specifically listed duties]." Contrary to respondent's assertion, we do not defer to the Board's interpretation of that definition under circumstances such as these.

■ Deference to agency interpretation of statutes is warranted where the legislature uses a "general delegative term" but gives "an agency the authority, responsibility and discretion for refining and executing general legislative policy." *Springfield Education Assoc.*, 290 Or at 228. Examples of such terms include "fair," "unfair," "undue," "unreasonable," etc. *Id.* The term "law enforcement unit" as defined in ORS 181.610(12)(a) is not "delegative" under the *Springfield* analysis.

■ The court has also indicated on occasion that "interpretation of a statute by an agency charged with its enforcement and administration, although not binding, is entitled to our careful consideration." *Knapp v. City of North Bend*, 304 Or 34, 41, 741 P2d 505 (1987). To the extent that *Knapp* has not been supplanted by later statutory construction cases, and may encompass some sort of "deference" principle, it is not applicable here, because the definition in question is

---

[3] The parties engage in a similar dispute regarding the proper construction of "police officer" and "corrections officer." At least as to the issue presented here, the definition of "police officer" in ORS 238.005(14)(L) (1999) incorporating by reference the definition of "corrections officer" from ORS 181.610(5) is an "exact" term. *See generally Springfield Education Assoc.*, 290 Or at 223-24 (describing the nature of "exact" terms). Similarly, the "corrections officer" definition in ORS 181.610(5) is "exact" insofar as it specifically incorporates the "law enforcement unit" definition in ORS 181.610(12)(a). In all events, the content of those terms is not material to our analysis.

found in ORS chapter 181, which pertains to state police and criminal justice services, and the Board is not charged with the enforcement and administration of any part of ORS chapter 181. In short, the definition of "law enforcement unit" at issue here has broader application than its incorporation by reference into a statute that the Board is charged with enforcing. Where a statutory definition is broadly applicable in various contexts, it would generally be inappropriate for a court to defer to the interpretation of one of several agencies that may use that definition.

■      Thus, we approach the interpretation of the term "law enforcement unit" by looking to the statute's text and its context (which, under these circumstances, includes ORS chapter 238, which incorporates the term by reference). We look to the legislative history of the term only if legislative intent is not clear from the text and context. *See generally PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). As explained below, we conclude that the meaning of the statute is clear, when viewed in context. We therefore do not consider legislative history.

Except as otherwise specifically defined in ORS 181.610(12)(a), a "law enforcement unit" must satisfy three definitional components: It must be (1) an "organization of the state"; (2) "whose primary duty as prescribed by law, directive, or ordinance" is, as pertinent to this case, (3) "[t]he custody, control, or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention." As described below, the forensic units at OSH do not meet that definition because, even assuming the other elements are satisfied, no "law, directive, or ordinance" "prescribe[s]" the duties of the forensic units. Nor does OSH as a whole meet that definition: As described below, the primary duty of OSH, as prescribed by law, directive, or ordinance, is not the "custody, control or supervision of individuals convicted or arrested for a criminal offense and confined to a place of incarceration or detention." Rather, OSH's "primary duty" is "the care and treatment of mentally ill persons." ORS 426.010.

We turn to the pertinent statutes. ORS 426.010 provides:

"Except as otherwise ordered by the Department of Human Services pursuant to ORS 179.325, the *Oregon State Hospital* in Salem, Marion County, and the Eastern Oregon Psychiatric Center in Pendleton, Umatilla County, *shall be used as state hospitals for the care and treatment of mentally ill persons who are assigned to the care of such institutions by the department* or who have previously been committed to such institutions." (Emphasis added.)

ORS 179.321(1) charges the Department of Human Services with the operation, control, management and supervision of OSH, as well as other facilities.[4] Individuals who have been found to be mentally ill may be civilly committed to the Department of Human Services and placed in OSH. ORS 426.060.

Other statutes address the placement of mentally ill persons who have been arrested or convicted of crimes. ORS 161.327(1) provides that those tried for criminal offenses but found guilty except for insanity may be placed under the jurisdiction of the PSRB "for care and treatment." The court making the determination also determines whether the person found guilty except for insanity "should be committed to a state hospital designated by the Department of Human Services[.]" ORS 161.327(2). Also, when a court has reason to doubt that a criminal defendant is fit to stand trial due to a mental disease or defect, it may "order the defendant to be committed to a state mental hospital designated by the Department of Human Services for the purpose of an examination[.]" ORS 161.365. If such a defendant is found unfit to stand trial, the court may "commit the defendant to the custody of the superintendent of the mental hospital designated by the Department of Human Services[.]" ORS 161.370(2). *See also* ORS 179.475 (providing for the transfer of mentally ill Department of Corrections inmates and juveniles within the jurisdiction of the Oregon Youth Authority to a hospital such as OSH under certain circumstances).

---

[4] ORS 179.325, which is cross-referenced in ORS 426.010, permits the Department of Human Services to change "the purpose and use of any state institution being used as an institution for the care and treatment of the mentally ill or mentally retarded in order to care for persons committed to its custody" under certain circumstances.

In sum, the statutory framework allows for OSH to provide care and treatment of mentally ill people who have been assigned to it by the Department of Human Services or a court. Those people come to OSH through various routes: They may have been civilly committed, transferred from a correctional facility or a youth correctional facility, placed within the jurisdiction of the PSRB after being found guilty except for insanity, or ordered by a court for evaluation. Given that statutory framework, we conclude that the "primary duty" of OSH, for purposes of ORS 181.610(12)(a), is the broad duty described by ORS 426.010: "the care and treatment of mentally ill persons."

■ Petitioners point to no "law, ordinance or directive," ORS 181.610(12)(a), that specifies a "primary duty" for the forensic unit at OSH in which they work—much less any "law, ordinance or directive" that specifies that the unit's primary duty is "custody, control or supervision of individuals convicted of or arrested for a criminal offense," ORS 181.610(12)(a)(B), and we are aware of none. Consequently, the forensic unit in which petitioners work is not a "law enforcement unit."

■ The question thus reduces to whether OSH—as opposed to its component forensic units—is a "law enforcement unit." Respondent argues that, because OSH's statutorily prescribed primary duty is the "care and treatment of mentally ill persons," ORS 426.010—and not the "custody, control, or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention," ORS 181.610(12)(a)(B)—OSH as a whole does not satisfy the statutory requisites of a "law enforcement unit."

Petitioners respond that an entity may have more than one "primary duty"—and that OSH, in fact, does. In support of their assertion that an entity can have multiple "primary duties," petitioners note that ORS 181.610(12)(a) refers to organizations "whose primary duty, as prescribed by law, ordinance or directive, is any one *or more* of the following [list, including 'custody, control and supervision' as specified in ORS 181.610(12)(a)(B)]." (Emphasis added.) In particular, with respect to OSH, petitioners argue that the numerous

statutes that authorize the placement of patients from the criminal justice system within OSH's care impose an additional "primary duty" of "custody, control or supervision of individuals convicted of or arrested for a criminal offense and confined to a place of incarceration or detention."

We reject petitioners' "multiple primary duty" premise, as applied to OSH. We emphasize at the outset that the principal pertinent definition of the word "primary" is: "first in rank or importance : CHIEF, PRINCIPAL ‹the ~ duty of safeguarding the peace of the world—P. J. Noel-Baker› ‹the ~ member of the cabinet›." *Webster's Third New Int'l Dictionary*, 1800 (unabridged ed 1993). A "primary duty" is singular—it is the chief, principal, or most important duty. Here, the legislature's explicit choice of text corroborates that construction: The statute refers to "primary duty"—singular—not "duties."

We note, further, that the only arguably plausible alternative definition of "primary" is "not derived from or dependent on something else." *Webster's Third New Int'l Dictionary* at 1800. That is, "primary" as opposed to "derivative." Under either the "singular" or the "not derivative" construction, OSH's "primary duty"—its second-to-none core duty—is the care and treatment of the mentally ill. To the extent that some units at OSH engage in the custody, control, or supervision of mentally ill persons who have been arrested or convicted of crimes, that is ancillary to, and derivative of, that primary duty.

Petitioners, for their part, offer no other plausible alternative definition of "primary duty." Rather, they point to the "any one or more" language of ORS 181.610(12)(a). That language will not, however, bear the freight that petitioners would have it carry. The plain meaning of that language, when read in the context of the entire statute, is that a law enforcement unit's "primary duty" may encompass performing a variety of law enforcement-related tasks, including investigating crimes, enforcing the criminal laws, detaining arrestees and persons convicted of a crime, etc. Nothing more. There is no suggestion that an entity whose primary purpose does not relate to law enforcement, but which nevertheless incidentally performs one of the listed tasks, is a

"law enforcement unit." We thus affirm the Board's determination that OSH is not a "law enforcement unit" within the meaning of ORS 181.610(12)(a), and in turn, ORS 181.610(5). Given that conclusion, we conclude, as did the Board, that petitioners were not "police officers," ORS 238.005(14)(L) (1999), for purpose of PERS classification.

We turn to petitioners' constitutional arguments. Petitioners argue that, to the extent that the definition of "police officer" in ORS 238.005(14)(L) (1999) is interpreted not to include mental health therapists, it lacks a "rational basis" and therefore is unconstitutional under Article I, section 20, of the Oregon Constitution,[5] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[6]

■■ We first consider petitioners' arguments under the Oregon Constitution. An equal privileges and immunities analysis in this context[7] entails a determination of:

"(1) whether the legislature had authority to act; (2) whether one class of persons receives privileges that the other does not; and (3) whether the disparate treatment had a rational basis." *Crocker and Crocker*, 332 Or 42, 54, 22 P3d 759 (2001) (citing *Seto v. Tri-County Metro Transportation Dist.*, 311 Or 456, 467, 814 P2d 1060 (1991)).

Petitioners do not dispute that the legislature has authority to enact laws pertaining to how PERS benefits for government workers will be determined. Petitioners argue that they are a "true class" for purposes of the second prong of the test, because mental health therapists employed at OSH exist apart from the PERS law itself. Respondent argues that the class petitioners propose is not a "true class" because the classification of government workers into different categories for purposes of determining PERS benefits is a classification

---

[5] Article I, section 20, of the Oregon Constitution, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[6] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

[7] Where a classification is based on immutable characteristics such as sex or race, a different test is employed. *See generally Tanner v. OHSU*, 157 Or App 502, 521-23, 971 P2d 435 (1998).

created by the laws themselves, and does not involve antecedent characteristics of the class or its members. We need not resolve the parties' "true class" dispute in the present case, because, even assuming that the classifications at issue in ORS 238.005 involve "true classes," we have no doubt that such do not result from animus, bias or stereotype. They have a rational basis, and do not violate Article I, section 20, of the Oregon Constitution.

■     Respondent points out that the legislature could rationally have concluded that police officer and firefighters are entitled to greater benefits under the PERS statutes because it viewed those jobs as being particularly hazardous and demanding, and because better benefits could aid in recruiting good candidates to fill those jobs. Petitioners' rejoinder to respondent's argument is that their jobs, too, are hazardous and demanding. That may well be the case. However, as we stated in *Crocker*, a statute "does not have to be perfect to be rational." *Crocker and Crocker*, 157 Or App 651, 662, 971 P2d 469 (1998). A statute may be underinclusive yet still be constitutional, "as long as the distinction that it makes among classes is reasonably related to a legitimate state interest." *Id.* We conclude that the legislature's choice to treat police officers and firefighters differently from other employees for purposes of the PERS system is "rational" for purposes of Article I, section 20 analysis.

The same conclusion applies with equal force to the "rational basis" test under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Crocker*, 332 Or at 55 ("[T]he constitutional analysis that we have advanced under Article I, section 20, of the Oregon Constitution, applies equally under the federal standard[.]").

Affirmed.