Argued and submitted June 25, reversed and remanded with instructions October 29, 1986, reconsideration denied January 16, petition for review denied March 17, 1987
(303 Or 74)

## PERLA DEVELOPMENT COMPANY, INC.,
*Respondent,*

*v.*

## PACIFICORP,
formerly known as Pacific Power & Light Company,
*Appellant.*

(83-707-CV-1; CA A35003)

727 P2d 149

Peter R. Jarvis, Portland, argued the cause for appellant.

With him on the briefs were Charles Adams, Portland, and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Timothy A. Bailey, Klamath Falls, argued the cause for respondent. With him on the brief was Crane & Bailey, Klamath Falls.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and W. Benny Won, Assistant Attorney General, Salem, filed a brief *amicus curiae* for Gene Maudlin, Public Utility Commissioner of Oregon.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Pacificorp appeals from a judgment awarding Perla Development Company (Perla) damages for breach of contract, trebled under ORS 765.185. It contends that the trial court erred in holding that it had jurisdiction over Perla's claims and in enforcing the contract. We conclude that the trial court had jurisdiction but that it erred in enforcing an unenforceable contract. Therefore, we reverse.

Before 1975, Perla developed a subdivision in Klamath County, known as Oregon Shores I. In 1975, it wanted to develop another subdivision, known as Oregon Shores II. Perla wished to represent to prospective buyers that electric hookups would be free of charge. It contacted Scholtes, Pacificorp's district manager at the time. In 1976, Scholtes sent Perla a letter which provided that, on payment of $13,300, Pacificorp would build a distribution line to the new development and that "Pacifi[corp] will provide free electrical extension to any lot in [Unit 2] which contains a residence or mobile home with a minimum estimated annual consumption of $500." At that time, the Public Utilities Commissioner's (PUC) regulations and Pacificorp's tariff regarding residential line extensions provided that free hookups could be granted to any customer for whom the cost of the extension would not exceed eight times the estimated annual revenue Pacificorp could expect from that customer.

In 1980, Perla asked Scholtes for a current statement of the understanding between the parties. In response, Scholtes sent Perla a letter stating that Pacificorp would provide free hookups for residences with a minimum estimated annual consumption of $500 and would allow up to a maximum of 825 feet of free line extension. Perla was dissatisfied with the number of feet of free line extension, and it obtained a second letter from Scholtes omitting the line extension limitation.

In 1981, the PUC issued an order, effective May 1, 1981, requiring all public utilities to reduce their free line extension allowances from a 8:1 to a 3:1 revenue ratio and to determine customer revenue by the average usage of a class of customers rather than the estimated annual revenue for any one customer. To comply with that order, Pacificorp filed a new tariff providing that it would furnish free line extensions as long as the installation cost did not exceed $1,200. That was

increased to $1,300 in 1982, to $1,329 in 1983 and to $1,425 in 1984.

In 1983, a lot holder in Oregon Shores II requested a hookup. Pacificorp informed him that a partial fee was due. Perla contacted Mooney, Scholtes' successor at Pacificorp, and cited the agreement between the parties. Mooney explained that, due to subsequent PUC action, free extensions were no longer possible.

■ Perla sued, alleging breach of contract and promissory estoppel in separate counts. It claimed treble damages and attorney fees for wilful misconduct. It also sought damages for the diminution in value of 102 lots it then owned and for which a line extension fee would be charged when any lot owner sought hookup. Perla did not challenge the PUC's authority or the reasonableness of the rates set. Its sole argument was that the contract may be enforced in spite of those valid rates. Pacificorp's motions to strike Perla's complaint for lack of jurisdiction, for a judgment notwithstanding the verdict and to set aside the judgment for lack of jurisdiction were all denied by the trial court.[1]

■ Pacificorp first contends that the trial court lacked "subject-matter" jurisdiction because Perla's claim involves a challenge to PUC's regulations and Pacificorp's tariff and, thus, Perla should have taken its claim first to the PUC. *See Morgan v. Portland Traction Co.,* 222 Or 614, 331 P2d 344 (1958); *O.-W.R. & N. Co. v. McCulloch,* 153 Or 32, 55 P2d 1133 (1936). We disagree.

Perla's claims are based on the alleged agreement by Pacificorp to provide free electric hook-ups to the purchasers of lots in Ocean Shores II. Notwithstanding the subsequent

---

[1] Pacificorp has characterized the issue as being one of "subject-matter" jurisdiction. If there is a jurisdictional question in this case, it is one of *primary* jurisdiction. Primary jurisdiction is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented. Davis, *Administrative Law Treatise,* § 22.1 (1983). Davis describes the application of the doctrine of primary jurisdiction:

"When a court and an agency have concurrent jurisdiction to decide a question, the most common reason for a court to hold that the agency has primary jurisdiction is that the judges, who usually deem themselves to be relatively the generalists, should not act on a question until the administrators, who may be relatively the specialists, have acted on it."

PUC order prohibiting free hook-ups, Perla brought this action on theories of breach of contract, promissory estoppel and entitlement to treble damages for gross negligence or wilful misconduct under ORS 756.185. Those claims, and the relief sought, are within the jurisdiction of the circuit court. *See Holman Transfer Co. v. PNB Telephone Co.*, 287 Or 387, 400 n 7, 599 P2d 1115 (1979). Therefore, the trial court correctly determined that it had jurisdiction.

■      However, we conclude that the trial court erred in not directing a verdict against Perla. Pacificorp is excused from performance of the contract, because subsequent governmental action prohibited its performance; in fact, it made performance illegal. Therefore, Pacificorp's duty to perform was discharged. *See Dorsey v. Oregon Motor Stages*, 183 Or 494, 502, 194 P2d 967 (1948); *see also AIEA Lani Corp. v. Hawaii Escrow and Title*, 64 Hawaii 638, 647 P2d 257, 262 (1982); *Restatement (Second) Contracts* §§ 261, 264 (1981).[2] That rule might not apply if the language of the contract or the circumstances indicate to the contrary. That is, if the parties agree to perform regardless of supervening illegality, "[s]uch an agreement is usually interpreted as one to pay damages if performance is prevented rather than one to render a performance in violation of law." *Restatement (Second) Contracts*, §264 *Comment a.* Nothing in the language or the circumstances here suggests that Pacificorp assumed the risk of subsequent illegality.[3] Perla cannot recover under a theory of breach of contract or promissory estoppel.

Reversed and remanded with instructions to enter judgment for defendant.

---

[2] *Restatement (Second) Contracts* §264 states:

"If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was basic assumption on which the contract was made."

[3] Generally, construction of a contract is a question of law for the court. *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971).