Argued and submitted November 12, 1999, reversed and remanded with
instructions April 4, 2001

SERGEANT'S TOWING, INC.,
an Oregon corporation;
Handy Andy Towing, Inc.,
an Oregon corporation;
Oregon Towing Co.,
an Oregon corporation;
and Speed's Automotive, Inc.,
an Oregon corporation dba Speed's Towing, Inc.,
*Respondents,*

*v.*

CITY OF PORTLAND,
BUREAU OF POLICE,
*Appellant.*

(9806-04626; CA A104335)

22 P3d 237

Nancy E. Ayres, Senior Deputy City Attorney, argued the cause and filed the brief for appellant.

Sean Donahue argued the cause for respondents. With him on the brief was Donahue & Associates.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiffs are four towing companies that have contracts with defendant City of Portland to tow and store vehicles for the city, including private vehicles that the city has ordered to be towed for parking or traffic violations. Plaintiffs brought a declaratory judgment proceeding to determine whether they are required to pay the city a $15 fee on certain towed vehicles after plaintiffs have foreclosed their statutory liens against the vehicles for towing and storage charges or otherwise have acquired ownership of them.[1] The court entered a judgment that declared that plaintiffs are not required to pay the fee, and the city appealed. We conclude that plaintiffs are required to pay the fee and, therefore, reverse.

Portland City Code (PCC) Chapter 16 governs the towing and release of private vehicles. PCC 16.30.520 is the provision that addresses release. It provides:

"A.   Any private company that tows and stores any vehicle pursuant to this Chapter, shall have a lien on the vehicle, in accordance with ORS 87.152, for the just and reasonable charges for the tow and storage services performed. The company may retain possession of that vehicle, consistent with this Chapter, until towing and storage charges have been paid. Provided, however, the City shall pay all storage charges that accrue as a result of the hearings process [that is provided in this Chapter].

"B.   If the required towing and storage charges have been paid, the vehicle must be immediately released to the person(s) entitled to lawful possession. A vehicle towed pursuant to [PCC] 16.30.220 K shall be immediately released to the person(s) entitled to lawful possession upon [presentation of] proof of insurance and payment of towing [and] storage and payment of a $15 fee to the police agency. If towing and storage charges have not been paid, a vehicle will not be released except upon order of the Towing Hearings Officer.

---

[1] Plaintiffs' action sought relief in addition to a declaration, but our disposition of the appeal makes it unnecessary to discuss the other aspects of the case.

"C. A vehicle towed pursuant to this Chapter may only be released to the owner, or to the person who was lawfully in possession or control of the vehicle at the time it was towed, or to a person who purchased the vehicle from the owner and who produces written proof of ownership. In all cases, adequate evidence of the right to possession of the vehicle as determined by the City Towing Board of Review, must be presented prior to the release of the vehicle."

As the quoted language from subsection B indicates, the provision distinguishes between vehicles towed pursuant to PCC 16.30.220 K and all other towed vehicles. Only people seeking release of vehicles towed pursuant to PCC 16.30.220 K are required to pay a $15 fee before their vehicles are released. The vehicles subject to that fee are vehicles that have been towed at the order of police officers who reasonably believe that the drivers of the vehicles were driving uninsured, driving with a suspended or revoked license, or driving without a valid operator's license.[2]

■ Towing companies may acquire title to towed vehicles through the foreclosure of statutory liens for towing and storage charges or through the voluntary transfer of title by vehicle owners as payment for those charges. In 1994, the city began to demand that towing companies pay the city the $15 fee specified in PCC 16.30.520 B for the release of vehicles towed pursuant to PCC 16.30.220 K on which the companies have acquired title. A member of the city's Towing Board of Review raised a question about that policy at a July 1995 board meeting. That led the board's chair to request an

---

[2] PCC 16.30.220 K provides:

"Any authorized officer may, without prior notice, order a vehicle towed, when:

"* * * * *

"K. A police officer reasonably believes that the vehicle's operator has committed any of the following offenses:

  "1. Driving uninsured (ORS 806.010), or;

  "2. Driving while suspended or revoked (ORS 811.175 or ORS 811.182), or;

  "3. Operating a vehicle without a valid operator's license (ORS 807.010) and the officer reasonably believes that the operator's license has been expired for 120 days or more, or that the operator has not had a valid driver's license within the previous 120 days."

opinion from the city attorney's office on the city's authority to require towing companies to pay the fee. A deputy city attorney responded to that request by sending the chair an interoffice memorandum that concluded that the city could require the companies to pay it.

In 1997, a lawyer for an association of towing companies wrote a letter to the city's mayor asking her (1) to sponsor an ordinance that would exempt towing companies from the fee or (2) to direct the city's police department not to collect the fee from the companies. The mayor responded with a letter that rejected those requests. Her response led plaintiffs to file their declaratory judgment action, which led to the declaratory judgment from which the city appealed.

The city and plaintiffs present various issues on appeal, which we address in turn. The city first argues that the trial court lacked jurisdiction of the action and therefore erred in failing to dismiss it. The city reasons that the mayor's letter rejecting the request that she sponsor an ordinance to exempt the towing companies from paying the fee or that she direct the police department not to require them to pay it constituted a quasi-judicial decision by the mayor. If it were such a decision, it could be challenged only by filing a petition for a writ of review within 60 days of the mayor's letter, *see* ORS 34.020 to ORS 34.040, which plaintiffs did not do.

The short answer is that the mayor's decision to reject the association's request was not a quasi-judicial decision. For these purposes, a quasi-judicial decision is one that is the product of an adjudicative process. At a minimum, such a process is one that "is bound to result in a decision * * * that * * * is bound to apply preexisting criteria to concrete facts." *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 602-03, 601 P2d 769 (1979).[3] The letter to the mayor

---

[3] Although the test used in *Strawberry Hill 4 Wheelers* to identify quasi-judicial actions arose in a case that required the court to distinguish between legislative and adjudicative acts, the Supreme Court held in *Koch v. City of Portland*, 306 Or 444, 448, 760 P2d 252 (1988), that the test in *Strawberry Hill 4 Wheelers* "is sufficient to distinguish a quasi-judicial act from any other type of act." There is more to the test than the quoted statement indicates, *see Strawberry Hill 4 Wheelers*, 287 Or at 602-04, but the statement adequately captures an essential feature of it.

from the association's lawyer sought a political solution to a legal dispute. The mayor's response to the letter indicates that she understood it that way.[4] Although the letter threatened litigation if the dispute were not resolved, the mayor was under no legal obligation to respond to it or, if she did, to give anything other than a political response. Consequently, the letter did not initiate a process that was bound to result in a decision that applied preexisting criteria to concrete facts. It follows, therefore, that the mayor's response to the letter did not constitute a quasi-judicial decision that plaintiffs had to challenge, if at all, by writ of review.[5]

■   The city also argues that the court erred by failing to dismiss plaintiffs' action for failure to join as parties to the action all of the towing companies that could be affected by the court's declaration. ORS 28.110 provides that,

"[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

The record indicates that there are 34 towing companies that have contracts with the city to provide towing services. Plaintiffs are four of those 34 companies. The city argues that ORS 28.110 required plaintiffs to join the other 30 companies in the declaratory judgment action, because the other companies have interests that would be affected by the declaration.

A declaration that the city could not collect the $15 fee from plaintiffs certainly could benefit the other 30 companies, because the city presumably would treat the declaration as one that applied to the collection of the fee from all

---

[4] The mayor's response to the lawyer's letter stated her understanding of the association's request to be a "request that the City begin waiving the $15.00 fee [that] the City imposes as one of the conditions for obtaining release of impounded vehicles." Although the association bolstered its request with legal arguments in support of it, nothing suggests that the request was anything other than a request for a political accommodation to avoid threatened litigation, and nothing suggests that the mayor understood it to be anything else.

[5] The city also argues, for the first time on appeal, that the Towing Board of Review's receipt of the deputy city attorney's interoffice memorandum on the city's authority to collect the $15 fee constituted a quasi-judicial act by the board that had to be challenged, if at all, by writ of review. It was not. A request by the chair of a public agency for a legal opinion from the agency's lawyer and the receipt of that opinion by the agency do not constitute quasi-judicial acts by the agency.

towing companies, not just plaintiffs. However, a contrary declaration would not necessarily affect the other companies, because they would not be bound by it and would be free to litigate the issue themselves if they chose. We conclude that the potential effect of the declaration on the other towing companies is not the type of effect that required plaintiffs to join the other companies in the action.

The effect of a declaration on the absent towing companies is similar to the effect of the declaration in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975), on people who had interests equivalent to those of the plaintiff in that case. The plaintiff in *Deras* was a state legislative candidate who sought a declaration that state statutes that restricted political campaign expenditures violated Article I, section 8, and Article I, section 26, of the Oregon Constitution. Other political candidates and citizens had interests equivalent to those of the plaintiff, and those interests could have been affected by the declaration in *Deras* in the same way that the interests of the absent towing companies could be affected by the declaration in this case. If the city is correct that ORS 28.110 requires the absent towing companies to be joined in this case, then the statute required the plaintiff in *Deras* to join all political candidates and citizens in his action as well, and it required the court to dismiss the action on its own motion for the plaintiff's failure to join them. *See, e.g., Stanley, Adm. v. Mueller*, 211 Or 198, 200-02, 315 P2d 125 (1957). Of course, the court did not dismiss the action in *Deras*, and the trial court properly rejected the city's argument that the absent towing companies had to be joined in this case.

The type of shared interests at issue in this case and in *Deras* differ from those at issue in the cases in which courts have held that ORS 28.110 required absent parties to be joined. For example, the court held in *Stanley* that the devisees under a will had to be joined in a declaratory judgment proceeding brought by an estate administrator against the decedent's husband to determine whether the husband had a right to a share of the decedent's estate. The court's declaratory ruling would determine the amount of money that would be available to be distributed to the devisees from a fixed fund, so the devisees' interest in that fund would be directly affected by the court's ruling. The court held that ORS 28.110

was intended to prevent the entry of a declaratory judgment that would have that effect on an absent party's interest, so the devisees had to be joined in the action. *Stanley*, 211 Or at 201-10.

Similarly, in *Farmers Ins. Co. v. Stockton*, 112 Or App 120, 122-27, 827 P2d 938 (1992), we held that ORS 28.110 required a person injured in an automobile accident to be joined in a declaratory judgment proceeding brought by an insurance company to determine whether the company was required to indemnify the alleged tortfeasor for damages sustained by the injured party. As a corollary principle, the injured party was entitled to present evidence and to obtain an adjudication on the insurance coverage issue unencumbered by the effect of default judgments entered against the insureds and the driver of the insureds' vehicle in the declaratory judgment proceeding. Because the right of an injured party "to recover under an insurance policy is derived from the contractual rights of the named insured," *id.* at 123, a declaratory judgment between the parties to the contract on the insurance company's indemnity obligation would determine whether the injured party could recover under the insurance contract. However, ORS 28.110 provides that "no declaration shall prejudice the rights of persons not parties to the proceeding." For that to be true, the injured party had to be joined in the declaratory judgment proceeding (and to be permitted to participate fully in it) because, otherwise, the declaratory judgment could, in fact, prejudice the rights of the injured party. *Id.* at 125-27.

■ Viewed together, the cases establish a joinder principle under ORS 28.110 that requires joinder of parties whose interests would be prejudiced by a declaratory ruling that is adverse to their interests. A ruling adverse to plaintiffs on their obligation to pay the $15 release fee might have an effect on any later proceeding by any of the other towing companies that sought to challenge payment of the fee, but it would not necessarily prevent the absent companies from establishing that they are not required to pay the fee. In contrast, the rulings at issue in *Stanley* and *Farmers Ins. Co.* would have determined whether the absent parties could have later obtained any effective relief that was favorable to them on the disputed issues. Because the ruling sought by

plaintiffs on their obligation to pay the $15 fee would not prejudice the interests of the absent towing companies regarding payment of the fee, the court did not err in refusing to dismiss the action for failure to join them.

We turn to the merits of the parties' dispute, which principally concern the meaning of PCC 16.30.520 B and its relationship to the parties' contract. The trial court concluded that PCC 16.30.520 B applies only to people whose vehicles have been towed at the direction of the city and, as a consequence, that it does not apply to plaintiffs and the other towing companies. We reject that construction and conclude that the provision requires a $15 fee to be paid to the city for every vehicle towed pursuant to PCC 16.30.220 K that the city releases. Because the parties' contract requires plaintiffs to obtain a release from the city for every vehicle towed pursuant to PCC 16.30.220 K to which they acquire title, it follows that plaintiffs must pay the $15 release fee for each of those vehicles.

The city amended PCC 16.30.520 B in 1993 to implement ORS 809.715.[6] The legislature adopted ORS 809.715 in 1993 as part of a group of provisions that sought to promote compliance with the state's financial responsibility law for motor vehicles. ORS 809.715 does that by authorizing police officers to impound vehicles driven by people whom they have stopped if the officers have probable cause to believe that the people were driving uninsured. Vehicles that are impounded under the statute are to remain impounded "until a person with right to possession of the vehicle complies with the conditions for release or the vehicle is ordered released by a hearings officer." ORS 809.715(1). Subsection (3) of the statute states the conditions for release. It provides that a

"vehicle impounded under subsection (1) of this section shall be released to a person entitled to lawful possession upon [presentation of] proof of compliance with the financial responsibility requirements for the vehicle, payment to

---

[6] ORS 809.715 was numbered as ORS 806.014 when the statute was first codified after its adoption in 1993. *See* Or Laws 1993, ch 814. Legislative Counsel renumbered the statute in 1995, and the legislature amended it in 1997. *See* Or Laws 1997, ch 514, § 5. Those changes do not affect our decision in this case. We refer to the statute by its current number.

the police agency of *an administrative fee determined by the agency to be sufficient to cover its actual administrative costs for the impoundment,* and payment of any towing and storage charges. Proof shall be presented to the impounding police agency, which shall authorize the person storing the vehicle to release it upon payment of the charges.

ORS 809.715(3) (emphasis added).[7]

The city amended PCC 16.30.520 B in 1997 to expand the authority of police officers to impound vehicles. The expansion added vehicles whose drivers have been stopped by police officers who have probable cause to believe that the drivers were driving while their licenses were suspended or revoked, while under the influence of intoxicants, or without required driving privileges. The legislature made a comparable change in state law in 1997 when it adopted ORS 809.720. The effect of the 1993 and 1997 amendments to PCC Chapter 16 is that PCC 16.30.220 K and 16.30.520 B essentially parallel the impoundment and release provisions in ORS 809.715 and ORS 809.720.

■    In light of that history, we conclude that the release to which PCC 16.30.520 B refers is a release by the city of the vehicles that it has impounded pursuant to PCC 16.30.220 K. There is no question that ORS 809.715 and ORS 809.720 direct police agencies to hold impounded vehicles until people who are entitled to possession of the vehicles have presented to the agencies proof of compliance with the financial responsibility law and have paid the agencies the applicable administrative fee. We conclude that PCC 16.30.520 B imposes the same requirements. Under it, every vehicle impounded pursuant to PCC 16.30.220 K is to be held by the city until the conditions specified in PCC 16.30.520 B for its release have been met.[8] Those conditions include payment of a $15 fee to the city police department for each vehicle.

---

[7] The italicized language in the statute was added in 1997. It replaced language in the 1993 version of the statute that required the person to pay the police agency "a fee of $15." Since its amendment in 1993, PCC 16.30.520 B has required the person seeking release of an impounded vehicle to pay "a $15 fee to the police agency." We do not know whether the city undertook the evaluation specified in the 1997 amendment to ORS 809.715(3) and in ORS 809.720(3) to determine whether $15 is the amount that is sufficient to cover the police department's "actual administrative costs for the impoundment."

[8] It should be noted that those conditions need not be satisfied to obtain the release of a vehicle if, after a hearing, the city's Towing Hearings Officer finds the tow to be invalid. *See* PCC 16.30.430.

The contract between plaintiffs and the city provides, in turn, that a towing company

> "must obtain a release from the appropriate agency for any vehicle towed as a Police Tow on which the [company] accepts title or obtains a lien or dismantling certificate."

The vehicles that are subject to PCC 16.30.520 B are vehicles that have been towed as police tows under the parties' contract, and there is no dispute that the city police department is the agency that is required to release vehicles that are subject to PCC 16.30.520 B. Further, the vehicles about which plaintiffs sought a declaration on their obligation to pay a release fee are vehicles for which plaintiffs have accepted title or obtained a lien or dismantling certificate. Under those circumstances, the vehicles that are the subject of this action are vehicles that must be released by the city. Those vehicles are among those that are subject to PCC 16.30.520 B, which specifies as a release condition that a $15 fee be paid for each vehicle. It follows, therefore, that plaintiffs are required to pay a $15 fee for the release of the vehicles that are the subject of this action.

Plaintiffs contend that a construction of PCC 16.30.520 B that requires them to pay a release fee for vehicles on which they acquire title conflicts with the state lien statutes that give them a possessory lien for towing and storage charges[9] and with state and federal statutes that restrict the authority of cities to regulate private towing companies.[10] It does not.

PCC 16.30.520 B requires every vehicle owner who seeks release of a vehicle towed pursuant to PCC 16.30.220 K to present proof of insurance to the city and to pay a $15 fee. The requirement that a $15 fee be paid to the city for the release of every vehicle towed pursuant to PCC 16.30.220 K does not interfere with the enforcement of plaintiffs' lien rights or constitute a regulation of the towing business. The fee is paid in accordance with the parties' contract *after* plaintiffs have completed the foreclosure of their lien against a vehicle. The contract requires plaintiffs to pay the fee at that time because it requires them to obtain a release from the

---

[9] ORS 87.142 to ORS 87.206.

[10] ORS 822.200 to ORS 822.230; 49 USC § 14501(a).

city for every vehicle towed pursuant to PCC 16.30.220 K to which they acquire title, and payment of the $15 fee is a condition imposed by PCC 16.30.520 B for the release of each of those vehicles. To the extent that the city code expressly addresses towing companies, it specifically protects their lien rights and the obligation of vehicle owners to pay the companies for towing and storing their vehicles. *See* PCC 16.30.520.[11]

The contractual requirement that plaintiffs obtain a release from the city for every vehicle to which they acquire title is an unremarkable requirement. Plaintiffs act as the city's agents in towing and storing vehicles belonging to other people. After plaintiffs acquire title to a vehicle, there is no remaining agency function for them to perform for the city. The contract recognizes that and requires plaintiffs to act as the vehicle owners that they are by obtaining a release from the city in order to take possession of the vehicles from the city when plaintiffs cease to function as the city's agents.

We conclude, therefore, that the trial court erred in declaring that plaintiffs are not required to pay a $15 fee to the city for the release of vehicles that are impounded and towed pursuant PCC 16.30.220 K to which plaintiffs have acquired title through foreclosure of their possessory lien for towing and storage costs or through voluntary transfer. Plaintiffs are required to pay that fee. It follows that the court also erred by awarding plaintiffs supplemental relief in accordance with its declaration.

---

[11] Admittedly, the fee must be paid no matter how much is realized by plaintiffs through the foreclosure of their lien against a vehicle, which means that the fee may in some instances prevent plaintiffs from receiving the full amount owed to them under their lien. However, the applicable state statutes on the impoundment of vehicles provide for the payment of an administrative fee to police agencies for the release of every vehicle impounded pursuant to those statutes, and the city's ordinance imposes the same requirement as do the statutes. The lien statutes do not operate to give plaintiffs an exemption from that fee, so, as a practical matter, the fee does take precedence over plaintiffs' ability to recover the amounts owed to them for towing and storage charges through foreclosure of their lien. In that respect, the fee is similar in its effect to the fee that plaintiffs must pay to the Department of Transportation to obtain a title certificate that reflects their ownership of vehicles acquired through foreclosure of their statutory lien. *See* ORS 803.025; ORS 803.090; ORS 803.092. That fee also imposes a cost that must be paid *after* lien foreclosure to obtain the benefit that the foreclosure seeks to achieve, but the fee cannot reasonably be understood to impair or interfere with the lien.

Reversed and remanded with instructions to enter a judgment that declares that plaintiffs are required to pay the fee specified in PCC 16.30.520 B in order to obtain a release from the city on vehicles impounded pursuant to PCC 16.30.220 K to which plaintiffs have acquired title through foreclosure of their possessory liens for towing and storage costs or through voluntary transfers.